**MISSOURI PACIFIC RAILROAD COM-PANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 65C 40(2).

United States District Court
E. D. Missouri.

Oct. 10, 1967.

Mark M. Hennelly and Gilbert P. Strelinger, St. Louis, Mo., for plaintiff.

Richard D. Fitzgibbon, Jr., U. S. Atty., by John A. Newton, Asst. U. S. Atty., St. Louis, Mo., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MEREDITH, District Judge.

This is an action for refund of income taxes paid for the years 1955 and 1956. The government has asserted an additional defense which seeks to diminish recovery by Missouri Pacific Railroad Company (hereafter called "taxpayer") in those years in the amount attributable to the credit for foreign taxes claimed by the taxpayer.

The questions presented are:

(1) Did the taxpayer pay to the Republic of Mexico during the years 1955 and 1956 an income tax creditable against United States taxes under the provisions of §§ 901 and 903 of the Internal Revenue Code of 1954?

(2) In the event it is determined that an income tax was paid:

(a) what amount was paid,

(b) what is the amount of taxable income realized in Mexico in each year after allocation of the appropriate expenses?

The Court makes the following findings of fact:

1. This is an action arising under the Internal Revenue Laws of the United States. Jurisdiction is invoked pursuant to 28 U.S.C. § 1346(a) (1).

2. Taxpayer, Missouri Pacific Railroad Company, a corporation organized and existing under the laws of the State of Missouri, with its principal offices located in St. Louis, Missouri, is engaged in the business of operating as a common carrier by rail in interstate commerce.

3. Taxpayer has complied with the necessary formalities for jurisdiction and a number of proceedings have been had in this case, including the granting of a partial summary judgment on October 21, 1965, as amended by order of October 29, 1965. This partial judgment was entered on November 1, 1965, in favor of the taxpayer in an amount in excess of $2,000,000.00, and from this judgment the amounts of $154,662.48 and $147,983.43 were reserved for the years 1955 and 1956, respectively, for any amounts to which taxpayer may not be entitled as a result of the additional defense asserted by the government. The taxpayer has acknowledged satisfaction of the partial judgment, except for the amounts reserved.

4. In the usual course of taxpayer's business and the operation of railroads generally in the United States and Mexico, the freight train cars belonging to taxpayer, as well as other railroads, are utilized by others in an interchange arrangement which has developed over the years. As the cars pass from the tracks

of the owner to the tracks of another or user railroad and are utilized by the other railroad, the owning railroad becomes entitled to compensation for the use of its car by the user railroad.

5. The cars so used are not specifically and individually identifiable out of the total number of cars owned. The compensation paid for the use of the cars is computed on the basis of twenty-four hour use. This daily rate, called "per diem" or "car rental", during the years 1955 and 1956 was established in the same manner as various rates for previous years had been established by the Association of American Railroads, of which the taxpayer is a member.

6. During 1955 and 1956 the per diem for United States and Canadian-owned freight cars in the United States was $2.40 per car day. During these years the rate for the use of freight cars owned by the United States and Canadian Railroads in the Republic of Mexico was $3.40 per car day. The rate of $3.40 per car day was also in effect in the United States for the freight cars owned by Mexican railroads, which are non-resident foreign corporations under the United States revenue laws.

7. During 1955 and 1956 freight cars owned by taxpayer and its subsidiaries interchanged with Mexican railroads at the Mexican border. The interchange points were at Laredo and Brownsville, Texas. The interchange took place by taxpayer's locomotive pushing the freight cars onto a bridge over the Rio Grande River, at which point the Mexican railways pulled the cars off the bridge into Mexico. Taxpayers had no control over a car once it was interchanged onto the Mexican lines. Taxpayer had no operation of its own in Mexico during 1955 and 1956. Taxpayer did not release ownership of the cars while in Mexico.

8. An "Income Tax Law" was in effect in the Republic of Mexico during the years 1955 and 1956. The provisions of that law pertaining to the issues in this proceeding are, in substance, as follows:

"Article 1st—Income Tax is payable on the revenue derived from capital, work, or the combination of both * *

"Article 2nd—'Income' shall be considered as all kinds of proceeds, profits, gains, rentals, interest, products, benefits, participations, salaries, fees and, in a general way, all amounts received in cash, in securities, in kind or in credits which increase the possessions of the taxpayer. The taxable income is determined in each schedule.

"Article 6th—The following are subject to payment of Income Tax whenever they come within any of the situations provided for in this law.

    \*    \*    \*    \*    \*    \*

"II.—* * * Foreigners who reside abroad when their income is derived from sources of wealth situated or from business transacted in Mexico.

"III.—Civil or commercial companies constituted in the country or abroad when their income is derived from sources of wealth situated or from business transacted in the National Territory * * *

    \*    \*    \*    \*    \*    \*

"Article 28th—When because of the nature and the characteristics of the operations carried out by the taxpayers it is not possible, by ordinary procedures, to determine with exactness the taxable income, the Department of Treasury may enter into agreement for the determination of the tax base.

    \*    \*    \*    \*    \*    \*

"Article 125th—Those taxpayers are obligated to pay in this Schedule who receive, habitually or occasionally, income derived from:

    \*    \*    \*    \*    \*    \*

"XIV.—*Rentals*, prizes, royalties and retributions of all kinds which are received as owners or holders of personal property or of *rolling stock* from the persons to whom they

grant the use or exploitation of the same without transferring the ownership thereof. (Emphasis supplied.)

\* \* \* \* \* \*

"Article 201st—The following are obligated to require the proof of payment of the tax, or to withhold and pay the same in the receiving offices in accordance with the provisions of the Regulation and are jointly liable with the taxpayers for payment:

1. The persons who make payments to taxpayers located abroad of income which is taxes [sic] by this law. The withholding shall be made in the terms of the law or of the agreement which may have been entered into in the cases provided by Article 28th of this law \* \* \* "

9. The "Regulation of the Income Tax Law" which was in effect in Mexico during the years 1955 and 1956 provided for the following procedures:

"Article 9th—All persons who withhold some amount for the reasons set forth in Article 201 of the Law shall file within the month following that of the date of the withholding, in the office of the jurisdiction corresponding to their domicile, a declaration of the amount of the sums withheld, expressing the reason for the withholding and shall make payment of the tax at the time of presenting the declaration.

\* \* \* \* \* \*

"Article 143rd—Those persons to which Article 6th of the Law refers, who habitually or occasionally receive income of the kind included in this Schedule, are obligated to present a declaration in the month of January of each year, which covers the income received during the period of January to December of the prior year. In case said income is not received by the taxpayers, they shall, nonetheless, present said declaration."

10. In 1954, negotiations were conducted by the Mexico City law firm of Basham, Ringe and Correa, on behalf of the members of the Association of American Railroads (hereafter called "AAR"), with officials of the Department of the Treasury in Mexico and officials of the National Railways of Mexico. As a result of these negotiations, an agreement was entered into between the government of Mexico (i. e. The Department of the Treasury and Public Credit of the United Mexican States), the National Railways of Mexico and the Mexican Railway, and the United States and Canadian railroads. The agreement was reached pursuant to Article 28th of the Mexican Income Tax Law in order to comply with the obligations to pay the Mexican Income Tax on income from the rental of rolling stock.

11. The agreement recognized and stated that the income received by the United States and Canadian railroads derived from the rental of rolling stock while in the Republic of Mexico is subject to the payment of Mexican income tax. The agreement further recognized and stated that the Mexican railroads in accordance with Article 201st of the Mexican Income Tax Law are obligated (a) to retain the tax for which the United States and Canadian railroads are liable on the payments made to them by reason of the rental of rolling stock while in the Republic of Mexico, and (b) to account to the Mexican Treasury for the amounts so retained. The agreement then provided for the Mexican railroads to retain the difference between the basic per diem and the Mexican per diem rate and to pay the amounts so retained to the Mexican government in full satisfaction of the obligations of the United States and Canadian railroads for Mexican income taxes on the rolling stock rentals. The United States and Canadian railroads involved were obligated under the agreement to file with the Mexican Treasury Department an annual income tax return setting forth all income from the Mexican railroads for the rental of rolling stock and the total Mexican income tax due thereon. The agree-

ment also provided a grant from the Department of Treasury and Public Credit of the Mexican government to the Mexican railroads of a subsidy equivalent to the amount of retained tax. A similar agreement was entered between non-government owned Mexican railroads, the AAR, and the Mexican Treasury. Taxpayer was covered by these agreements and was bound by their terms.

12. During 1955 and 1956, taxpayer and its subsidiaries received monthly reports from the Mexican railroads showing the individual car numbers and the number of car days with respect to freight cars in Mexico during that period. Each report set forth the total amount of money earned and the amount of tax withheld by the Mexican railroads. These reports were audited and monthly the information was transmitted by let-ter to the law firm in Mexico City. The law firm in Mexico City, Basham, Ringe and Correa, prepared taxpayer's annual Mexican income tax returns. A proposed copy of the return would be sent to taxpayer for review and upon finding the return satisfactory, the Mexican law firm would file the return with the Federal Treasury Office of Mexico. Taxpayer would monthly draw a draft on the various Mexican companies for the amount that was due taxpayer from the Mexican companies. The net amount due was calculated by taking the gross amount of per diem less the amount of tax that was withheld.

13. The total per diem rentals earned by taxpayer and its subsidiaries during 1955 and the total income tax withheld by Mexican railroads during that year was as follows:

| Name of Railroad | Total Per Diem Rentals | Total Tax Withheld |
|---|---|---|
| Mo. Pac. | $ 667,831.40 | $196,071.86 |
| I. G. N. | 196,316.00 | 57,675.32 |
| N. O. T. and M. and St. L. B. & M. | 184,691.40 | 54,237.84 |
| | $1,048,838.80 | $307,985.02 |

In 1956 the total rentals earned by taxpayer from rolling stock used by Mexican railroads in Mexico was $1,100,-872.83, from which Mexican railroads withheld tax in the amount of $313,893.-64.[1]

1. In a companion case, Missouri-Illinois R.R. v. United States, 268 F.Supp. 214, (E.D.Mo. May 3, 1967), involving the same problem, decided by Judge Roy W. Harper, the Court found the plaintiff failed to sustain its burden of proof to show that the taxes were actually paid to the government of Mexico. In the instant case plaintiff introduced the following evidence:

(1) authenticated copies of schedules prepared by the National Railroads of Mexico showing the amount of per diem rentals payable from the National Railroads of Mexico and the allocation made thereof as to the amounts paid to various American railroads, including the plaintiff, and the amounts withheld as taxes for the years 1955 and 1956. These schedules show that $278,432.00 in tax was withheld from taxpayer in the year 1955 and $283,187.00 in tax was withheld in 1956;

(2) testimony that similar reports were received by the plaintiff on a monthly basis from privately-owned Mexican railroads;

(3) plaintiff's records made from the monthly records received, showing the monthly per diem reports from all Mexican railroads and the amount of tax withheld;

(4) certified copies of Mexican income tax returns filed for the plaintiff by the Mexican law firm, the certification was made by the Income Tax Bureau of the Republic of Mexico.

This, and other evidence, amply supports plaintiff's contention as to the total per diem received and the total tax withheld and paid by the plaintiff to the Mexican Government.

14. The government's expert witness testified as to how costs should be allocated to those cars in Mexico and from this analysis concluded as follows:

| | Gross Income | Deductions | Net Income From Mexico |
|---|---|---|---|
| 1955 | $1,048,838.80 | $653,981.84 | $394,856.94 |
| 1956 | 1,100,872.83 | 685,534.83 | 415,338.00 |

Taxpayer's expert testified as to how expenses should be allocated and made a determination as follows:

| | Gross Income | Deductions | Net Income From Mexico |
|---|---|---|---|
| 1955 | $1,048,838.80 | $425,347.80 | $623,491.00 |
| 1956 | 1,100,872.83 | 429,300.83 | 671,572.00 |

The principal differences between the government's testimony and that of taxpayer are that the government expert found the ownership cost of taxpayer on a daily basis of all freight cars amounted to $2.115 for the year 1955 and $2.082 in 1956, and allocated these costs on the basis of the car days used in Mexico. The taxpayer kept an accurate record of actual expenses in Mexico, plus the allocation of other costs which it deemed appropriate and its expert concluded that for the taxable year 1955 the cost per active car day in Mexico was $1.379 and in the United States $1.924. For the year 1956 taxpayer's expert concluded that the cost per active car day in Mexico was $1.325 and $1.745 in the United States. The testimony reflects that a more intense use of a freight car results in a greater cost per car day. While there was no direct testimony in the record showing the intensity of use in Mexico, it is reasonable to conclude from the evidence that the use in the United States is more intense than that in Mexico. The government has allocated a number of costs which are not properly allocated to the expense incurred by taxpayer in determining its income in Mexico. The Court finds that taxpayer's computation of its net income from Mexico is reasonable, detailed and accurate.

15. The United States tax paid by taxpayer was $3,929,620.00 in 1955 and $2,653,090.00 in 1956. Taxpayer's taxable income from all sources was $8,067,026.00 in 1955 and $6,019,348.00 in 1956. Taxpayer's gross income from Mexico was $1,048,838.80 in 1955 and $1,100,872.83 in 1956.

16. The tax limitation formula provided in § 904 of the 1954 Internal Revenue Code is expressed as follows:

$$\frac{\text{Taxable Income from Mexico}}{\text{Taxable Income from All Sources}} \quad X \quad \text{U. S. Tax} = \text{Tax Credit Limitation}$$

Applying taxpayer's computation of net income from Mexican sources, the following result is obtained:

$$\frac{\$623{,}491.00}{\$8{,}067{,}026.00} \quad \text{x} \quad \underset{\text{1955}}{\$3{,}929{,}620} = \$303{,}720.$$

$$\frac{\$671{,}572.00}{\$6{,}019{,}348.00} \quad \text{X} \quad \underset{\text{1956}}{\$2{,}653{,}090} = \$296{,}005 \,[2]$$

17. In accordance with the limitations provisions of § 904 of the 1954 Internal Revenue Code, taxpayer is entitled to a tax credit in the amount of $303,720 in 1955 and $296,005 in 1956, plus statutory interest.

18. The partial judgment entered in this case on November 1, 1965, reserved the amount of $154,662.48 for the tax year 1955 and $147,983.43 for the tax year 1956, pending determination of defendant's additional defense for said tax years. The reserved amounts are based upon a potential foreign tax credit of $307,985.02 for 1955 and $313,893.64 for 1956. The difference between the actual credit to which plaintiff is entitled and the potential credit upon which reserved amounts were based is $4,265.02 for 1955 and $17,888.64 for 1956. These amounts subtracted from the reserved amounts result in the taxpayer being entitled to a judgment from the sums reserved in the amounts of $150,397.46 for the year 1955 and $130,094.79 for the year 1956, plus-deficiencies interest attributable thereto and statutory interest on the total at six percent per annum.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter of this action.

■ 2. The laws of Mexico in force during the years 1955 and 1956 imposed an income tax upon taxpayer recogniz-able as a credit against the United States income tax under §§ 901 and 903 of the Internal Revenue Code of 1954.

■ 3. Pursuant to the limitations of § 904 of the United States Internal Revenue Code of 1954, taxpayer is entitled to a judgment in the sum of $150,397.46 for the year 1955 and $130,094.79 for the year 1956, plus deficiencies interest attributable thereto and statutory interest on the total at six percent per annum.

2. While disputing that any tax was paid to Mexico, if the government's calculations as to net income were applied, it would result in a tax credit of $192,342.11 for 1955 and $183,061.88 for 1956.