T.C. Summary Opinion 2001-174


UNITED STATES TAX COURT


ROBERT W. AND LILA L. BLEWETT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6277-00S.                    Filed November 8, 2001.


Glen G. Utzman, for petitioners.

Julie L. Payne, for respondent.


WOLFE, Special Trial Judge: This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1] The decision to be entered is not reviewable by any other court, and this opinion

---

[1]Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

should not be cited as authority.

Some of the facts have been stipulated and are so found. The stipulation of facts and the accompanying exhibits are incorporated herein by this reference. Petitioners resided in Grangeville, Idaho, at the time the petition was filed.

Respondent determined a deficiency of $8,506 in petitioners' 1996 Federal income tax. After concessions,[2] the issue for decision is whether petitioners' losses during 1996 constitute nondeductible passive losses under section 469.

Background

In 1976, Robert Blewett (petitioner) and his brother, Don Blewett, organized Highland Enterprises, Inc. (Highland), a C corporation. Petitioner and his brother each owned 50 percent of the outstanding stock of Highland during 1996. Throughout the year in issue, Highland was engaged in two separate businesses: a general heavy construction business and a real estate sales business. Highland's general heavy construction business included building logging and fire roads for the U.S. Forest Service and private logging companies, building roads for governmental entities, constructing homes and commercial buildings, and developing residential and commercial land subdivisions (including the building of streets, curbs,

---

[2]Petitioners concede that they improperly failed to report interest income of $72 and income of $1,724 from a jewelry sales business on their 1996 Federal income tax return.

sidewalks, and the installation of utilities). The activities of Highland's real estate sales operation, which did business during 1996 as "Highland Realty", included selling residential and unimproved real estate.

During 1996, both petitioner and his brother worked full-time for Highland. Petitioner provided services to both Highland's general heavy construction business and its real property sales activity. For the former, he managed the corporate office, secured construction projects, acquired land for property development, ordered construction materials and supplies and assured their timely arrival at construction sites, and reviewed construction progress at construction sites. For the latter, petitioner provided services as a real estate broker. Petitioner is licensed as a real estate broker in the State of Idaho.

Prior to 1996, Highland suffered a series of setbacks that put it in a dire financial situation. The setbacks included a cost overrun in excess of $1 million on a road job with the U.S. Forest Service, a lengthy lawsuit involving the company's purchase of faulty equipment, and deliberate interference with Highland's work by an environmental group (Earth First) that blocked its roads and destroyed hydraulic hoses and three major pieces of equipment.

Because of Highland's poor financial condition, the company

was unable to lease or purchase equipment on credit.  Financial institutions simply would not make any loan of any type to Highland.  Highland's continued existence depended on its obtaining equipment.  Faced with this predicament, petitioner and his brother separately purchased the necessary equipment in their individual names and separately leased it to Highland.  There is no dispute that petitioner and his brother were engaged in an equipment leasing activity amounting to a trade or business during the year in issue, and the record clearly supports that characterization.  Respondent has not raised any questions as to whether the leasing activity was for profit, and we treat that matter as conceded by respondent.  Petitioner and his brother each owned 100 percent of the equipment that he leased to Highland; none of the equipment was jointly owned.  They leased the equipment exclusively to Highland.  It was never used in another trade or business.  Petitioners had no written rental agreement with Highland.  During 1996, Highland did not pay petitioners any rent.

During 1995, Highland paid rent of $69,600 and $40,091 to petitioners and Don Blewett, respectively.  During 1996, Highland paid rent of $56,263 to Don Blewett and no rent to petitioners.  At trial, petitioner testified that because of Highland's poor financial condition, its rental payments to the Blewetts were irregular.  In his words, "you pluck all the feathers off of that

bird, and it's not going to lay any more eggs." Accordingly, payments were made only when either petitioner or Don Blewett needed the money to make payments to creditors for leased equipment.

Petitioners claimed a net loss of $50,033 from their equipment leasing activity on Schedule C, Profit or Loss From Business (Sole Proprietorship), of their 1996 Federal income tax return.[3] In the notice of deficiency, respondent disallowed the entire loss on the ground that the leasing activity was subject to the passive loss limitations of section 469.

Discussion

Section 469(a)(1) limits the deductibility of losses from certain passive activities. Generally, a passive activity includes the conduct of a trade or business in which the taxpayer does not materially participate. Rental activity is generally treated as a passive activity without regard to whether the taxpayer materially participates.[4] Sec. 469(c)(1), (2), (4). Rental activity is defined as "any activity where payments are principally for the use of tangible property." Sec. 469(j)(8).

_____

[3]The loss was attributable primarily to deductions of $30,062 and $17,141 for depreciation and sec. 179 expenses, respectively.

[4]A statutory exception that was added in 1993 provides that certain real estate operators need not treat their interests in rental real estate as passive activities. Sec. 469(c)(7). That exception is inapplicable here, because the subject of this controversy is personal property.

Both parties agree that petitioners' equipment leasing activity falls within the definition of a rental activity in section 469(j)(8), and that the income from that activity is passive in nature, unless petitioner qualifies under one of the six exceptions listed in the regulations. See Tarakci v. Commissioner, T.C. Memo. 2000-358; sec. 1.469-1T(e)(3)(ii)(A) through (F), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988). Petitioner specifically relies upon the so-called incidental exception, which we previously discussed in the recent and analogous case of Tarakci v. Commissioner, supra, and also the so-called grouping exception (section 1.469-4(d)(1), Income Tax Regs.). We agree with petitioner that the incidental exception and the reasoning of the Tarakci opinion are applicable here, so we discuss the rules of the grouping exception only insofar as they relate to the provisions of the incidental exception.

Petitioners' position is that their leasing activity is not a rental activity because it qualifies as an exception to the definition of a rental activity under section 1.469-1T(e)(3)(ii)(D), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988),[5] which, together with paragraph (e)(3)(vi), provides that

---

[5]Temporary regulations are entitled to the same weight as final regulations with respect to the years to which they apply. Nissho Iwai Am. Corp. v. Commissioner, 89 T.C. 765, 776 (1987). Sec. 1.469-1T, Temporary Income Tax Regs., 53 Fed. Reg. 5700-5711
(continued...)

an activity involving the use of tangible property is not a rental activity if the rental of such property is treated as incidental to a nonrental activity of the taxpayer. Section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), provides:

> (C) Property used in a trade or business. The rental of property during a taxable year shall be treated as incidental to a trade or business activity (within the meaning of paragraph (e)(2) of this section) if and only if--
>
> > (1) The taxpayer owns an interest in such trade or business activity during the taxable year;
> >
> > (2) The property was predominantly used in such trade or business activity during the taxable year or during at least two of the five taxable years that immediately precede the taxable year; and
> >
> > (3) The gross rental income from such property for the taxable year is less than two percent of the lesser of--
> >
> > > (i) The unadjusted basis of such property; and
> > >
> > > (ii) The fair market value of such property.

With respect to the application of the three tests of subdivision (C), we consider it significant that the parties have stipulated that during 1996: (1) Petitioner owned 50 percent of

---

[5](...continued)
(Feb. 25, 1988), is effective for taxable years beginning after Dec. 31, 1986. Sec. 1.469-11(a)(2), Income Tax Regs., 53 Fed. Reg. 5686 (Feb. 25, 1988).

the outstanding stock of Highland; (2) the equipment in question was used exclusively in Highland's trade or business activity throughout the year; and (3) petitioners did not receive any gross rental income from Highland for the equipment.

Respondent contends that section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), is inapplicable to the instant case because it requires that a taxpayer at least temporarily stop using property in his trade or business and start using the property in a rental activity. Respondent argues that the exception is not available when the property is used in the rental activity and the trade or business activity simultaneously. Respondent makes three arguments in support of this construction of the regulation. Respondent's arguments are set forth below, but we note that in our view here "respondent advocates a strained interpretation of language prepared by respondent's own employees." See Ferguson v. Commissioner, T.C. Memo. 1992-451. In interpreting the language in question, we bear in mind that respondent's personnel drafted that language, and the resolution of doubts against the draftsman is appropriate in many circumstances. See id. (and authorities cited therein).

First, respondent argues that section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), uses the past tense when referring to the use of the property in

the trade or business.  Respondent contends that use of the verb "was" in paragraph (2) of the relevant regulation means that for the purposes of the incidental exception, the property cannot be used in the trade or business activity and the rental activity simultaneously.

We are not convinced by this argument.  Section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), provides that the rental of property during a taxable year shall be treated as incidental to a trade or business activity if, inter alia, "The property was predominantly used in such trade or business activity <u>during the taxable year</u> or during at least two of the five taxable years that immediately precede the taxable year".  (Emphasis added.)  The word "was" in the regulation refers not only to past years, but also to the current taxable year.  The terms of the regulation are consistent with the conclusion that the property can be used in the trade or business activity at any time and still satisfy the requirements for the incidental exception to the definition of a rental activity.  We conclude that the language of the regulation does not require that the taxpayer must cease using the property in a trade or business activity before it can be used in the rental activity.

Second, respondent cites the preamble to T.D. 8175, the Treasury Decision promulgating section 1.469-1T(e)(3)(vi)(C),

Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988). The preamble states that the exception applies if "an insubstantial amount of rental income is derived from property that was recently used in a trade or business activity of the taxpayer and is temporarily rented". Id.

We apply a regulation according to its plain or ordinary meaning unless such interpretation would lead to absurd results or another construction is supported by unequivocal evidence of administrative intent. Phillips Petroleum Co. v. Commissioner, 101 T.C. 78, 107 (1993), affd. without published opinion 70 F.3d 1282 (10th Cir. 1995). Respondent does not suggest that the application of the plain meaning of section 1.469-1T(e)(3) (vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), leads to absurd results. Thus, we must determine whether the language from the preamble amounts to unequivocal evidence of administrative intent to limit the exception to only those situations where the property being rented is no longer being used in the trade or business activity.

The preamble does refer to the use of the property in the trade or business activity in the past tense, and it does refer to the use of the property in the rental activity in the present tense. However, in our view, rather than creating a separate requirement in addition to the requirements set forth in the text of the regulations, the preamble merely recites one example of a

situation that would satisfy section 1.469-1T(e)(3)(vi)(C)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988). The preamble's general one-sentence introductory comment concerning the regulation in question does not amount to "unequivocal evidence of administrative intent" that use of the property in the trade or business activity must cease before the property is used in the rental activity.  A contrary conclusion would import into the regulation a requirement that simply is not in the terminology of the regulation.

Third, respondent cites section 1.469-1T(e)(3)(viii), Example (6), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988) (hereinafter referred to as example (6)).  In example (6), a taxpayer owns an interest in a farming activity, which is a trade or business activity, and owns farmland that is used in the farming activity in 1985 and 1986.  In 1987, 1988, and 1989, the taxpayer does not use the land in the farming activity. Instead, during those years he leases the land to other parties, but continues his interest in the farming activity.  The taxpayer is permitted to treat the rental of his land as incidental to his farming activity in 1987 and 1989 based on the gross rental income received.  Id.

Example (6) does illustrate respondent's narrow interpretation of section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).  Example (6) is the

only example in the regulations that applies section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988). In our view, the applicability of the regulation is not limited to the precise circumstances of an example set forth in the regulation. The example plainly is illustrative rather than limiting or exclusive.

Moreover, as stated above, section 1.469-1T(e)(3)(vi)(C)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), permits the property to be used in the trade or business during either the current year or 2 of the 5 years that precede the taxable year. Example (6) is an illustration of the property being used in 2 of the 5 preceding years. Subdivision (ii) of example (6) provides: "For 1987 and 1989, the taxpayer owns an interest in a trade or business activity, and the farmland which the taxpayer leases to the rancher was used in such activity for two out of the five immediately preceding taxable years." Here, petitioners' property was used in the trade or business during the current year. The facts of example (6) and the facts of the instant case relate to different clauses of section 1.469-1T(e)(3)(vi)(C)(2), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).

Respondent also argues that section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), does not apply to the facts here because the rental activity and

the trade or business activity must be conducted by the same entity.  In effect, respondent argues that the regulation does not apply because the equipment leasing activity of petitioners' sole proprietorship was not incidental to any other trade or business activity of their sole proprietorship.

We previously ruled on this issue in Tarakci v. Commissioner, T.C. Memo. 2000-358.  There, the taxpayer formed a sole proprietorship that purchased equipment and leased it to a general partnership in which the taxpayer and another individual were equal partners.  In the notice of deficiency, the Commissioner disallowed the taxpayer's entire loss from his sole proprietorship on the ground that the loss was subject to the passive activity loss limitations of section 469.  The taxpayer argued that section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), applied, and that for purposes of that section, the trade or business activities of the partnership were trade or business activities of the sole proprietorship.  The Commissioner contended that section 1.469-1T (e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), did not apply because the equipment leasing activity of the sole proprietorship was not incidental to any other activity of the sole proprietorship.

We held that the trade or business activities of the taxpayer for the year in issue included the trade or business

activities of the partnership for purposes of section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).  We noted that the "The regulations require the taxpayer own 'an interest in such trade or business activity', not that the taxpayer be the sole owner of the trade or business."  Tarakci v. Commissioner, supra (quoting sec. 1.469-1T(e)(3)(vi)(C)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988)).  There, the taxpayer was actively involved in the affairs of the partnership, "substantially contribut[ing] both time and effort to the success of * * * [it]."  Id.

Here, petitioner's ownership of 50 percent of Highland's stock, as well as his substantial time commitment to Highland, satisfies the requirement that he have an interest in such trade or business.

Respondent argues that the holding of Tarakci conflicts with the language of section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988), and section 1.469-1T(e)(3)(viii) Example (6), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).  We disagree with respondent's analysis.

In our view, the reasoning and the holding in the Tarakci case are correct and properly applicable to the facts and circumstances here.  The trade or business activities of petitioners for 1996 include the trade or business activities of

Highland for purposes of section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).

We hold that petitioners are entitled to treat their leasing activity as incidental to Highland's trade or business activities under section 1.469-1T(e)(3)(vi)(C), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988). Consequently, petitioners' leasing activity is not classified as a rental activity. Sec. 1.469-1T(e)(3)(ii)(D), Temporary Income Tax Regs., 53 Fed. Reg. 5703 (Feb. 25, 1988).

The passive loss limitations of section 469 still apply to petitioners unless they meet the material participation standard. Sec. 469(c)(1). The regulations permit a taxpayer to group an activity conducted through a C corporation subject to section 469 with another activity of the taxpayer for purposes of determining whether the taxpayer materially or significantly participates in the other activity. Sec. 1.469-4(d)(5)(ii), Income Tax Regs. Since petitioners conducted an activity through a C corporation subject to section 469,[6] petitioners are entitled to group their

---

[6]The passive loss limitations of sec. 469 apply only to individuals, estates, trusts, closely held C corporations, and personal service corporations. Sec. 469(a)(2). A closely held C corporation, for purposes of sec. 469(a)(2), is defined as any corporation in which more than 50 percent in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals at any time during the last half of the taxable year. Secs. 469(j)(1), 465(a)(1)(B), 542(a)(2). Since all of the stock of Highland, a C corporation, was owned directly by two individuals during the year in issue, Highland is
(continued...)

activities for the purpose of determining material participation. Since it is undisputed that petitioner materially participated in the trade or business activities of Highland,[7] petitioners automatically meet the material participation standard with respect to their leasing activity.

For the foregoing reasons, petitioners' losses during 1996 do not constitute nondeductible passive losses under section 469.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.

---

[6](...continued) subject to sec. 469.

[7]An individual is treated as materially participating in an activity for the taxable year if the individual participates in the activity for more than 500 hours during such year. Sec. 1.469-5T(a)(1), Temporary Income Tax Regs., 53 Fed. Reg. 5725 (Feb. 25, 1988). The parties stipulated that during the year in issue, petitioner worked 40 or more hours per week for Highland. Thus, petitioner unquestionably satisfies the 500-hour requirement.